**Arthur and Elke PLAXTON,**
**Appellants**

v.

**LYCOMING COUNTY ZONING**
**HEARING BOARD and Laurel**
**Hill Wind Energy, LLC.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 28, 2009.
Decided Dec. 4, 2009.
Reargument Denied Jan. 21, 2010.

Arthur Plaxton, appellant, pro se.

Karl K. Baldys, Williamsport, for appellee, Lycoming County Zoning Hearing Board.

Benjamin E. Landon, Williamsport, for appellee, Laurel Hill Wind Energy, LLC.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this land use appeal, Arthur and Elke Plaxton (Objectors), representing themselves, ask whether the Lycoming County Zoning Hearing Board (ZHB) erred in denying their substantive validity challenge to certain amendments to the Lycoming County Zoning Ordinance (zoning ordinance), which permit, by right, wind energy facilities in certain zoning districts in the County. Objectors assert the ordinance amendments are invalid because they: do not promote the public health, safety and welfare; improperly intrude on a judicial function; are arbitrary and unreasonable; and, fail to satisfy the constitutional and statutory mandate that zoning laws promote and protect the preservation of the natural, scenic and historic values of the environment. Because we discern no error in the ZHB's denial of Objectors' substantive validity challenge, we affirm.

## I. Background

In January 2005, Laurel Hill Wind Energy, LLC (Laurel Hill) requested a special exception under the then-existing County zoning ordinance. Through its special exception request, Laurel Hill sought to construct and operate a wind energy project along the Laurel Ridge in Jackson and McIntyre Townships, Lycoming County, on land primarily within the County's Resource Protection (RP) Zoning District. Specifically, Laurel Hill proposed to construct a 70.5 megawatt wind-powered electric-generating, transmitting and interconnecting facility that would consist of approximately 47 (later reduced to 35) individual wind turbines located

along Laurel Hill Ridge; an approximate two-mile long, 34.5 kilovolt, overhead transmission line; and, a switch yard and substation. The project would occupy an area of approximately 706 leased acres in Jackson and McIntyre Townships.

The zoning ordinance in effect at the time permitted, by special exception, a "public service use." Prior to the commencement of hearings on Laurel Hill's special exception request, the County Zoning Administrator determined Laurel Hill's proposed project fell within the "public service use" classification. A landowner whose property was adjacent to Laurel Hill's proposed project appealed the Zoning Administrator's determination.

After hearings, the ZHB affirmed the Zoning Administrator's determination. On further appeal, the Court of Common Pleas of Lycoming County (trial court) upheld this determination. The neighboring landowner then filed an appeal to this Court, but subsequently discontinued that appeal.

Numerous hearings then ensued before the ZHB on Laurel Hill's special exception request. After these hearings, the ZHB issued an opinion denying Laurel Hill's special exception request on the grounds: the proposal was inconsistent with the purpose of the RP District and the County's Comprehensive Plan; the proposal would create substantial, adverse impacts not typically generated by a public service use; and, Laurel Hill did not show it could adequately mitigate these adverse impacts. Laurel Hill appealed the ZHB's decision to the trial court.

In May 2007, the trial court issued an opinion and order affirming the ZHB's decision. The trial court determined the objectors to the special exception application proved to a very high probability that Laurel Hill's proposed wind energy project

would generate adverse impacts not normally generated by a "public service use," and these impacts would pose a threat to the health, safety and welfare of the community as well as the wildlife community. Laurel Hill filed a timely appeal to this Court, but it subsequently discontinued its appeal.

## II. Validity Challenge

On November 15, 2007, the Lycoming County Commissioners enacted amendments to the zoning ordinance. Among other things, these amendments allow, by right, the use of wind energy facilities in the County's RP, Agricultural and Countryside Zoning Districts. Wind energy facilities are not permitted in the County's other zoning districts.

In February 2008, Laurel Hill filed an application for a zoning permit to begin construction of its proposed wind energy facility. After a review of Laurel Hill's application, including various clarifications requested and provided, the zoning officer issued the zoning permit, with conditions, on May 9, 2008.

Approximately a month later, Objectors filed a substantive validity challenge to the zoning ordinance amendments. Through their challenge, Objectors asserted:

- The amendments allow a development that was judicially determined [in the prior special exception proceedings] to be detrimental to the health, safety, and welfare of the community;

- Allowing a use that is inconsistent with the purpose of the RP District is unreasonable, arbitrary, capricious, and contrary to Pennsylvania law;

- The amendments do not satisfy Section 604(1) of the Pennsylvania Municipalities Planning Code (MPC)[1] (the provisions of zoning ordinances shall be

designed "[t]o promote, protect and facilitate any or all of the following: the public health, safety, morals, and the general welfare ... as well as preservation of the natural, scenic and historic values in the environment and preservation of forests, wetlands, aquifers and floodplains.") and Section 603(g)(2) of the MPC, 53 P.S. § 10603(g)(2) ("Zoning ordinances shall provide for protection of natural and historic features and resources."); and,

- The amendments deny the people the right to preservation of the natural and aesthetic values of the environment as required by the Pennsylvania Constitution. See PA. CONST. art. I, § 27 ("The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.")

Reproduced Record (R.R.) at 32a, 34a–36a; ZHB Op., Finding of Fact (F.F.) No. 9.

A hearing ensued before the ZHB. At hearing, Objector Arthur Plaxton, represented himself. He presented argument in support of his challenge to the zoning ordinance amendments, but he did not present any witness' testimony. Plaxton also submitted: a memorandum of law in support of his validity challenge; a portion of a revised map showing the proposed wind turbine locations; one page of Laurel Hill's November 2008 permit application; a list of mitigation measures previously recommended by the Lycoming County Planning Commission for the proposed project; sections 1 and 2 of the zoning

---

1. Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10604.

ordinance amendments; a letter Plaxton wrote to the County Commissioners; a document copied from the County's website regarding citizen comments to the ordinance amendments; and, an e-mail from the County's Chief Clerk regarding Pennsylvania cases relating to exclusionary zoning.

Notably, Plaxton did not seek to introduce any evidence relating to the proceedings on Laurel Hill's prior "public service use" special exception request. Nevertheless, before the ZHB Plaxton primarily argued the ordinance amendments were invalid based on the prior trial court decision that upheld the ZHB's denial of Laurel Hill's special exception request on the grounds the proposed project would have a detrimental impact on the health, safety and welfare of the community. Plaxton asserted this prior decision concluded that Laurel Hill's proposed wind energy facility was detrimental to the public health, safety and welfare and, as a result, the ZHB was required to conclude the ordinance amendments, which permit such facilities by right, were invalid.

Ultimately, the ZHB issued an opinion in which it determined Objectors did not satisfy their burden of proof on their substantive validity challenge. Objectors appealed to the trial court.

Without taking additional evidence, the trial court affirmed the ZHB's decision. This appeal by Objectors followed.

On appeal,[2] Objectors argue the ordinance amendments are invalid because they: do not promote the public health, safety and welfare; improperly intrude on a judicial function; are arbitrary and unreasonable; and, fail to satisfy the constitutional and statutory mandate that zoning

laws promote and protect the preservation of the natural, scenic and historic values of the environment.

## I. Police Powers/Applicability of Collateral Estoppel

■ Objectors first argue the zoning ordinance amendments violate the Pennsylvania Constitution and several statutes. Therefore, the ordinance amendments must be declared invalid.

In particular, Objectors contend several Pennsylvania statutes and cases require zoning ordinances promote the public health, safety and welfare. They assert Laurel Hill's wind energy project for which a zoning permit was granted after the passage of the ordinance amendments had, prior to the amendments, been denied a special exception. Objectors note the trial court previously upheld the denial of the special exception on the ground the objectors in those proceedings proved the project was generally detrimental to the public health, safety and welfare. Objectors argue that when a zoning ordinance enables a project that was judicially determined to be contrary to the public health, safety and welfare, the ordinance is not promoting the public welfare.

Objectors also maintain the trial court here erred in determining that the prior trial court decision, which denied Laurel Hill's special exception request and which determined Laurel Hill's proposal was detrimental to the public welfare, was inapplicable here. Objectors argue the trial court erroneously believed they were relying on the doctrine *res judicata*, when, in fact, they were relying on the doctrine collateral estoppel. Applying collateral es-

---

**2.** Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hearing Bd.,* 873 A.2d 807 (Pa.Cmwlth.), *appeal denied,* 585 Pa. 692, 887 A.2d 1243 (2005).

toppel here, Objectors assert, the prior trial court determination that Laurel Hill's project was detrimental to the public health, safety and welfare should bar a contrary determination here that the zoning ordinance amendments, which permit such projects by right, is consistent with the public health, safety and welfare. For the reasons set forth below, we reject Objectors' assertions.

■■■ A zoning ordinance is valid when it promotes public health, safety or welfare, and its regulations are substantially related to the purpose the ordinance purports to serve. *Boundary Drive Assocs. v. Shrewsbury Twp. Bd. of Supervisors*, 507 Pa. 481, 491 A.2d 86 (1985) (citing *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926)). A validity challenge generally attacks zoning on substantive due process grounds, i.e., whether an ordinance is substantially related to a legitimate interest. *Springwood Dev. Partners, L.P. v. Bd. of Supervisors of N. Cornwall Twp.*, 985 A.2d 298 (Pa.Cmwlth.2009).

■■■ In Pennsylvania, the constitutionality of a zoning ordinance is reviewed under a substantive due process analysis. *McGonigle v. L. Heidelberg Twp. Zoning Hearing Bd.*, 858 A.2d 663 (Pa.Cmwlth. 2004). Under such analysis, the party challenging the validity of provisions of the zoning ordinance must establish that they are arbitrary and unreasonable and have no substantial relationship to promoting the public health, safety and welfare. *Id.; see also Open Pantry Food Marts v. Twp. of Hempfield*, 37 Pa.Cmwlth. 423, 391 A.2d 20 (1978) (court may declare an ordinance to be an invalid exercise of the police power only where it is proven that its provisions are clearly unreasonable and have no relation to public safety).

■■■ In *Woll v. Monaghan Township*, 948 A.2d 933 (Pa.Cmwlth.2008), *appeal denied*, 600 Pa. 767, 967 A.2d 962 (2009), this Court further explained:

It is well settled law in Pennsylvania that a municipality may enact zoning ordinances reasonably restricting the property right to protect and promote the public health, safety and welfare under its police power. A zoning ordinance is presumed to be valid. Therefore, one challenging the zoning ordinance has the heavy burden of establishing its invalidity. Where the validity of the zoning ordinance is debatable, the legislative judgment of the governing body must control.

*Id.* at 938 (citations and footnote omitted). Before a reviewing tribunal may declare a zoning ordinance unconstitutional, the challenging party must clearly establish the provisions of the ordinance are arbitrary and unreasonable. *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa.Cmwlth. 2006), *appeal denied*, 592 Pa. 768, 923 A.2d 1175 (2007). A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in the mind of the court. *Id.* Indeed, "[w]here the validity of an ordinance is debatable, the ordinance will be upheld as valid, and if there is room for difference of opinion as to whether the ordinance is designed to serve a proper public purpose, the court should not substitute its judgment for that of the governing body which enacted the legislation." *Trigona v. Lender*, 926 A.2d 1226, 1233 (Pa.Cmwlth.2007), *appeal denied*, 596 Pa. 721, 944 A.2d 760 (2008) (citing *Bilbar Constr. Co. v. Bd. of Adjustment of Easttown Twp.*, 393 Pa. 62, 141 A.2d 851 (1958)).

In rejecting Objectors' substantive validity challenge here, the ZHB made the following pertinent findings:

10. The facts relevant to this appeal are not in dispute. Prior to enactment of [the zoning ordinance amendments] on November 15, 2007, wind energy facilities were not specifically provided for by the [zoning ordinance], but rather, fell within the category of a public service use. Pursuant to the new [z]oning [o]rdinance, wind energy facilities are specifically provided for and regulated, being permitted by right, or being not permitted entirely, in certain zones.

11. Although the [z]oning [o]rdinance speaks for itself, the [ZHB] observes that Section 3230C.1 defines the purpose of regulation, site plan specifications, information specifications, and lists supplemental controls (A–L).

12. The [zoning] [o]rdinance defines wind energy as a natural resource and provides "wind energy facilities are permissible to harvest wind as a natural resource."

13. The [zoning] [o]rdinance requires a permit [a]pplicant to submit a general site plan, in accordance with Section 10240 of the [zoning] [o]rdinance, which must be complete prior to issuance by the [z]oning [a]dministrator of the [c]ertificate of [o]ccupancy. Specific information is required with the general site plan as set forth at [zoning] [o]rdinance Section 3230C.1(2)(a).

14. In addition, information specifications, including a community and environmental impact analysis by consultants mutually agreed upon by the [a]pplicant and the County, are required. [Zoning] [o]rdinance Section 3230C.1(3).

15. Supplemental controls address a wide range of issues including: tower safety; operations; set backs; avoidance of designated natural or wild areas; protection against signal interference; requirements for liability insurance; host municipality agreements; decommissioning and restoration of site; a requirement that the [a]pplicant sign a standard agreement with the Pennsylvania Game Commission; and[,] an outline of the permitting process.

16. The [zoning] [o]rdinance specifically provides "as a use permitted by right, the wind energy facility is determined consistent with the adopted Lycoming County Comprehensive Plan Phases I and II."

17. As a part of his presentation and evidence to the [ZHB] herein, [Objector] [Arthur] Plaxton has offered exhibits asserting deficiencies in the [a]pplication filed by Laurel Hill[ ] to establish a wind energy facility in McIntyre and Jackson Townships. Although the Zoning Administrator did issue a permit authorizing the commencement of this project, that determination has been appealed and is pending before the [ZHB] at [ZHB] No. 2008–06. Although useful for illustrative purposes, the [ZHB] specifically finds that the information regarding that [a]pplication is irrelevant for purposes of determination of the above-captioned [s]ubstantive [c]hallenge.

18. The [ZHB] observes that [Objectors'] Exhibit D . . . is a memorandum of argument, and that the "testimony" of [Objectors] was also in the nature of argument rather than factual testimony.

19. The [ZHB] does find that, in reviewing the [zoning ordinance amendments] as a whole, the provision for wind energy facilities is not an irrational deviation from the overall zoning plan. Wind energy facilities were permitted as a public service use under the prior [zoning] [o]rdinance in certain zones, ei-

ther by right or by special exception, and, of course, under the appropriate circumstances, could have been the subject of a variance application. The [zoning] [o]rdinance currently in effect does change, in part, the location and regulation of wind energy facilities, although it is noted these facilities are permitted in certain zones and not permitted in other zones.

20. As noted above, the [zoning] [o]rdinance provides for the [a]pplicant's submission of detailed information including not only a site plan but also hydrologic and geologic analysis, land use impacts, transportation impacts, wildlife impacts, and community impacts, among other things, and prescribes certain supplemental controls which are in the nature of performance criteria for the [z]oning [a]dministrator to apply through permitting, construction and operation. The [zoning] [o]rdinance specifically provides for a review and analysis of this information by the [z]oning [a]dministrator who will supervise the implementation of the use.

21. The [ZHB] notes the Statement of Purpose regarding the Section allowing wind energy facilities which states: "The purpose of this Section is to provide for the construction and operation of wind energy facilities, subject to reasonable conditions and information to be provided by an applicant that will protect the public health, safety and welfare."

22. Again, in addition to the general Statement of Purpose, there is a process defined by the [zoning] [o]rdinance to achieve its purpose. Ordinance Section 3230C.1.

23. The [ZHB] specifically finds that on the face of the [zoning] [o]rdinance itself, the provisions for wind energy facilities:

a) Are not fatally inconsistent with the [z]oning [o]rdinance as a whole;

b) Are not irrational deviations from the overall [z]oning [p]lan;

c) Are not an unlawful confiscation of real property rights or an impermissible interference with real property rights;

d) And, do adequately consider environmental factors, including the environmental rights of the citizens of the Commonwealth.

24. The [ZHB] finds that the [z]oning [o]rdinance provisions at issue are, in fact, a rational addition to the [z]oning [p]lan in Lycoming County and are not unfairly discriminatory to County citizens and landowners.

ZHB Op., Findings of Fact (F.F.) Nos. 10–24.

No error is apparent in the ZHB's determinations. More particularly, before the ZHB, Objectors presented *no* evidence to carry their heavy burden of establishing the ordinance amendments are arbitrary and unreasonable and bears no substantial relationship to promoting the public health, safety and welfare. Indeed, as noted above, in support of their validity challenge Objectors presented oral argument in support of their challenge to the zoning ordinance amendments, but did not present any witness' testimony. Plaxton also submitted various documents detailed above. No error is apparent in the ZHB's determination that this information was insufficient to satisfy Objectors' heavy burden of establishing the ordinance amendments were invalid.

Moreover, as noted by the ZHB, the ordinance amendments changed the prior zoning ordinance to allow, by right, wind energy facilities in certain zoning districts. The amendments state: "Wind energy facilities are permissible to harvest wind as a

natural resource" and "this use converts wind to energy as a source of power to provide electricity indirectly to the general public through the direct sale of wind-generated electricity to the power grid." Section 3230C.1(1) of the zoning ordinance. The obvious purpose of the ordinance amendments is to permit the harvesting of wind as a natural resource in order to convert it to energy as a source of power to provide electricity to the public.

In addition, as stated by the ZHB, the detailed amendments require a comprehensive application review process by the Zoning Administrator, which includes, among other things: a community and environmental impact analysis; hydrologic and geologic analyses; a land use impact analysis; a transportation impact analysis; tower safety requirements; setback requirements; and, a decommissioning process. Sections 3230C.1(3), (4) of the zoning ordinance (relating to information specifications and supplemental controls). Clearly, these provisions are aimed at mitigating the potential effects on the public of the construction and operation of wind energy facilities.

In light of the foregoing, we believe the ordinance amendments are valid because they promote public health, safety or welfare and the provisions are substantially related to the purpose the amendments seek to serve. More specifically, the goal of the ordinance amendments, to harvest wind as a natural resource and to convert it to energy as a source of power to provide electricity to the public, promotes public health, safety or welfare, and the provisions of the amendments are substantially related to this purpose. Objectors did not meet their heavy burden of proving a lack of any rational relationship to a legitimate governmental purpose.

Nevertheless, Objectors strenuously and repeatedly assert that, based on the prior trial court determination that Laurel Hill's project was detrimental to the public health, safety and welfare, the doctrine of collateral estoppel bars a contrary determination here that the ordinance amendments, which permit such projects by right, is consistent with the public health, safety and welfare. We disagree.

Collateral estoppel, or issue preclusion, is designed to prevent relitigation of questions of law or issues of fact, which have already been litigated in a court of competent jurisdiction. *McGill v. Southwark Realty Co.*, 828 A.2d 430 (Pa. Cmwlth.2003). Collateral estoppel is based on the policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Id.* at 434 (citation omitted).

In *J.S. v. Bethlehem Area School District*, 794 A.2d 936 (Pa.Cmwlth.2002), we provided a detailed description of *res judicata* and collateral estoppel. There, we stated:

> Res judicata encompasses two related, yet distinct principles: technical res judicata and collateral estoppel.
>
> * * *
>
> Technical res judicata requires the coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued . . .
>
> Similarly, collateral estoppel bars a subsequent lawsuit where (1) *an issue decided in a prior action is identical to one presented in a later action,* (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in

privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Id.* at 939 (citation omitted).

Responding to Objectors' *res judciata* and/or collateral estoppel arguments here, the ZHB stated:

[T]he [ZHB] concludes that factual or legal determinations by th[e] ZHB, or the reviewing Courts, in prior cases, regarding a prior permit application of [Laurel Hill], submitted pursuant to a prior version of the [zoning] [o]rdinance, do not mandate the conclusion that the current [zoning] [o]rdinance is invalid. Indeed, the [MPC] delegates broad powers to the governing body to enact and amend zoning regulations in a legislative capacity. 53 P.S. [§] 10601 et seq. *Raum v. Bd. of Supv. Of Tredyffrin Twp.*, [20 Pa.Cmwlth. 426] 342 A.2d 450 (Pa.Cmwlth.1975). Collateral estoppel or Res Judicata arguments simply do not apply in this context. See generally *Bell v. Zoning Bd. Of Adjustment of City of Pgh.*, [84 Pa.Cmwlth. 347] 479 A.2d 71 (Pa.Cmwlth.1984).

ZHB Op., Concl. of Law No. 11.

Upon review, we agree with the ZHB that the doctrine of collateral estoppel is inapplicable here. More specifically, the issue decided in the prior action involving Laurel Hill's special exception request is not identical to the issue presented in Objectors' validity challenge. To that end, the issue presented in Laurel Hill's special exception request was whether the objectors showed a high probability that Laurel Hill's proposed wind energy facility would generate adverse impacts not normally generated by a "public service use" and whether these impacts posed a substantial threat to the health and safety of the community. On the other hand, the issue presented in Objectors' validity challenge was whether Objectors could clearly establish the ordinance amendments were arbitrary and unreasonable or that it had no substantial relationship to promoting the public health, safety and welfare. Because these issues are clearly not identical, no error is apparent in the ZHB's determination that the doctrines of res judciata and collateral estoppel are inapplicable here.

## II. Intrusion on Judicial Function

Objectors next maintain the ordinance amendments are invalid because, through the enactment of the amendments, the County Commissioners essentially circumvented the trial court's prior determination (in the special exception proceedings) that Laurel Hill's wind energy project was contrary to the public health, safety and welfare. In enacting legislation that essentially overruled a prior judicial determination, Objectors argue, the Commissioners impermissibly invaded judicial territory. This argument fails.

It is beyond dispute that the County Commissioners possess authority to amend the zoning ordinance. Indeed, Section 601 of the MPC provides:

*The governing body of each municipality,* in accordance with the conditions and procedures set forth in this act, *may* enact, *amend* and repeal *zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of this act.*

53 P.S. § 10601 (emphasis added). In *Springwood Development Partners,* we recently explained:

The MPC specifically states that the governing body is acting in a legislative capacity when considering an amendment to land use ordinances.... *Consistent with the MPC, this Court has held that the consideration and adoption of zoning amendments is a purely legisla-*

*tive act within the complete discretion of the local governing body. Courts have no power to interfere with a strictly legislative process.*

*Id.* at 205 (citations omitted) (emphasis added). Further, "[t]he question of what best serves the public interest is primarily a question for the decision of the appropriate legislative body in a given situation...." *Anstine v. Zoning Bd. of Adjustment of York Twp.,* 411 Pa. 33, 39, 190 A.2d 712, 715 (1963).

In *Cleaver v. Board of Adjustment of Tredyffrin Township,* 414 Pa. 367, 375, 200 A.2d 408, 413 (1964), our Supreme Court explained: "Neither a zoning ordinance nor a comprehensive plan is absolutely rigid, static and unchangeable; either or both may be amended, supplemented, changed, modified or repealed-in the sound discretion of the legislative body and in accordance with statutory and other pertinent legal and Constitutional requirements-as conditions or changing circumstances may require...."

██ Thus, the County Commissioners clearly possessed the power to amend the zoning ordinance. Because neither statute nor case law requires the restriction of the Commissioners' discretion based on such prior proceedings as occurred here, we decline to disturb their enactments on this basis.

### III. Spot Zoning/Special Legislation

Objectors next argue the obvious purpose of the ordinance amendments was to permit as of right for one party a specific use of land that had been judicially determined to be detrimental to the public health, safety and welfare. They contend the ordinance amendments are actually "special legislation" or spot zoning and, therefore, they should be declared invalid. Again, we disagree.

██ "Spot zoning" and "special legislation" are essentially synonymous terms

which describe a governing body's discriminatory, arbitrary, and unreasonable action toward a particular piece of property. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975); *Commercial Prop., Inc. v. Peternel,* 418 Pa. 304, 211 A.2d 514 (1965). Specifically, spot zoning is defined as "[a] singling out of ... a small area [of land] for different treatment from that accorded to similar surrounding land...." *Appeal of Kates,* 38 Pa.Cmwlth. 145, 393 A.2d 499, 501 (1978). Special legislation is described as an ordinance that is "unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that it [is] aimed at [a] particular piece of property." *Commercial Prop.,* 418 Pa. at 311, 211 A.2d at 518. The most important inquiry then, is whether a particular piece of property is subject to discriminatory treatment. *See In re Realen Valley Forge Greenes Assocs.,* 576 Pa. 115, 838 A.2d 718 (2003).

██ Of further import here, this Court holds that "the state of mind of the legislative body in enacting a zoning ordinance is irrelevant to a determination of its validity.... Rather, the legislation must stand or fall on its own terms; even the strenuous lobbying by supporters of the zoning amendment for its passage itself does not render the amendment special legislation." *Appeal of Apgar From Decision of Bd. of Comm'rs of Manheim Twp.,* 661 A.2d 445, 448 (Pa.Cmwlth.1995). In *Apgar,* we explained:

In deciding the validity of a zoning ordinance, the courts have consistently limited the application of the theory of special legislation to situations where amendatory zoning ordinances were adopted to deprive the applicant of vested interests in permits issued before the amendment or to prevent a permitted use proposed in the pending application.... Thus, an amendatory zoning ordinance constitutes special legislation

only where it is enacted to *prevent* a lawful use of land permitted under the existing ordinance.

*Id.* (citations omitted) (emphasis in original). In *Apgar,* we rejected a special legislation claim based on the fact that the ordinance amendment at issue in that case had no confiscatory application and was not enacted to prevent any lawful use of land.

 Here, Objectors' spot zoning and/or special legislation claims are unavailing. To that end, we observe that the property upon which Laurel Hill proposes to construct its wind energy facility was *not* rezoned in a manner so as to subject it to unjustifiably different treatment from similar surrounding land. Indeed, the ordinance amendments did not rezone the property at issue at all; rather, the effect of the amendments is simply to permit, by right, wind energy facilities in all of the County's Agricultural, Countryside and RP zoning districts. Therefore, Objectors' spot zoning claim fails here.

 In addition, the ordinance amendments were not enacted to prevent a lawful use of land permitted under the prior zoning ordinance. To the contrary, the ordinance amendments permit a use by right in several zoning districts where that use was not specifically allowed under the prior ordinance. Moreover, the ordinance amendments have no confiscatory application. Thus, we reject Objectors' assertions that the ordinance amendments constitute special legislation.

## IV. Consistency with Purpose of RP District

 Objectors next argue the ZHB erred in overlooking the fact that the use of wind energy facilities is inconsistent with the zoning ordinance's stated purpose for the RP District. In support, Objectors point to this Court's decision in *McGonigle,* 858 A.2d at 668–69, in which we stated:

"A significant factor in determining the reasonableness of land use restrictions is whether the restrictions are consistent with stated purposes of the particular zoning district."

Contrary to Objectors' assertions, this case does not involve an analysis of any "restrictions" on land use; rather, this case involves Objectors' challenge to ordinance amendments which permit a certain use by right where such use was not specifically allowed previously. Because we are not confronted with a challenge to a *restriction* on land use, we believe Objectors' reliance on the principle articulated in *McGonigle* is misplaced.

In addition, Objectors assert the ordinance amendments are invalid because they are inconsistent with the County's Comprehensive Plan. However, Section 303(c) of the MPC specifically states: "Notwithstanding any other provision of this act, *no action by the governing body of a municipality shall be invalid nor shall the same be subject to challenge or appeal on the basis that such action is inconsistent with, or fails to comply with, the provision of a comprehensive plan.*" 53 P.S. § 10303(c) (emphasis added). Thus, to the extent Objectors maintain the amendments are inconsistent with the County's Comprehensive Plan, this claim fails.

Moreover, we perceive no inconsistency between the amendments which permit wind energy facilities by right and the purpose of the RP District. To that end, the zoning ordinance provides that the purpose of the RP zone is to:

[P]rotect the most important and sensitive natural areas as designated in the County Comprehensive Plan, which contribute greatly to the quality of life in Lycoming County. Protection of timber and other forest resources, wildlife habitat, special plant communities, scenic resources, and other natural areas is the

primary objective. *Continued harvesting of resources such as timber and game is an important activity of this district and can be beneficial to the resource if conducted properly.*

The [RP] district discourages intensive growth by requiring large site areas and setbacks that also preserve the rural character of the area where it is used. The minimal development which is allowed must be located so as to maximize the amount of undisturbed natural areas. Examples of areas which may fall within the [RP] District include State Game Lands and private hunting/fishing preserves.

Section 2310(A) of the zoning ordinance.

Despite their assertions that a wind energy facility use is inconsistent with the purpose of the RP District, Objectors offered no evidence before the fact-finder to demonstrate any alleged inconsistency. The ZHB here determined the ordinance amendments are not fatally inconsistent with the zoning ordinance as a whole and do not represent an irrational deviation from the overall zoning plan. F.F. No. 23(a), (b). Rather, the amendments state: "[w]ind energy facilities are permissible *to harvest wind as a natural resource ....*" Section 3230C.1(1) of the zoning ordinance (emphasis added). As indicated above, in its statement of purpose for the RP District, the zoning ordinance states the harvesting of resources is an important activity in the RP District and can be beneficial to the resource if conducted properly. *See* Section 2310(A) of the zoning ordinance.

Further, as to the operation of wind energy facilities, the ZHB found the purpose of the section allowing wind energy facilities is to provide for the construction and operation of such facilities, subject to reasonable conditions and information provided by an applicant that will protect the public health, safety and welfare. As the trial court explained:

[Objectors] contend the [ZHB] erred in ignoring "the inconsistency of the use ... with the purpose and nature of a[n] [RP]." The [ZHB] considered the [zoning] [o]rdinance's requirement that an applicant submit hydrologic and geologic analyses and impact statements respecting land use, transportation, and wildlife, and its prescription of certain supplemental controls, as well as its provision for review and analysis of the information submitted which would allow for supervision of the implementation of the facility, and decided that the amendment was not fatally inconsistent with the [zoning] [o]rdinance. "Protection of timber and other forest resources, wildlife habitat, special plant communities, scenic resources and other natural areas is the primary objective" of the [RP] zone. Inasmuch as the [zoning] [o]rdinance requires that any wind tower not be located within any mapped "scenic area", or state designated "Natural" or "Wild" area, and contains criteria designed to protect the habitat, the Court cannot find that the [ZHB] abused its discretion in finding the amendment not fatally inconsistent.

Tr. Ct., Slip Op. at 3–4 (footnotes omitted). We agree with the trial court. In short, in light of the detailed regulations outlined above with which a wind energy facility applicant must comply in order to obtain a permit to operate such a use, we discern no error in the ZHB's determinations that the ordinance amendments are not inconsistent with the purpose of the RP district.

## V. Compliance with MPC/Pennsylvania Constitution

As a final issue, Objectors contend the ordinance amendments violate provisions of the MPC and the Pennsylvania Constitution because these amendments do not protect and facilitate the preservation

of the natural, scenic and historic values in the environment. *See* Pa. Const. art. I, § 27; *see also* Section 604(1) of the MPC and Section 603(g)(2) of the MPC.

As noted above, Objectors presented no evidence to show the ordinance amendments are arbitrary, unreasonable or unrelated to a legitimate government purpose. Moreover, in its decision here, the ZHB explained the zoning ordinance requires an applicant seeking to construct a wind energy facility to submit detailed information including, among other things, a site plan but also hydrologic and geologic analysis, land use impacts, transportation impacts, wildlife impacts, and community impacts. *See* Section 3230C.1(3) of the zoning ordinance. In addition, the zoning ordinance prescribes certain supplemental controls in the nature of performance criteria for the zoning administrator to apply through permitting, construction and operation. *See* Section 3230C.1(4) of the zoning ordinance. Further, the ordinance prohibits the construction of wind towers in any location mapped *"Scenic Area"* or any state-designated "Natural" or "Wild" area. Section 3230C.1(4)(e) of the zoning ordinance. Based on these provisions, the ZHB determined that the ordinance amendments adequately take into account environmental factors, including the environmental rights of the citizens of the Commonwealth. *See* F.F. Nos. 13–15, 20, 23; Concl. of Law. No. 10. No error is apparent in the ZHB's determinations.

For the foregoing reasons, we affirm.

### ORDER

AND NOW, this 4th day of December, 2009, the order of the Court of Common Pleas of Lycoming County is **AFFIRMED.**