**Toll Brothers, Inc. v. Panitch, Schwarze, Jacobs & Nadel, P.C.**

C.P. of Montgomery County, no. 97-08264.

*Louis J. Sinatra,* for plaintiffs.

*H. David Kraut* and *Jeffrey B. McCarron,* for defendants Meyer and Akin, Gump, Strauss, Hauer, and Feld, LLP.

*Nicholas M. Centrella,* for defendant Panitch, Schwarze, Jacobs & Nadel, P.C.

CORSO, *J.,* March 2, 2011—This is a civil action filed by plaintiffs, Toll Brothers, Inc., and TB Proprietary Corp. (plaintiffs or Toll) against defendants, Panitch, Schwarze, Jacobs & Nadel, P.C., and Akin, Gump, Strauss, Hauer & Feld, LLP, and James R. Meyer, Esquire, on May 2, 1997.

Plaintiffs' amended complaint, which proceeded to trial before the undersigned and a jury, consisted of three counts: count I - Legal malpractice/negligence; count II - Contribution for abuse of process; and count III - Indemnity for abuse of process.

Basically, this action arises from the defendants' legal representation of plaintiffs in a lawsuit by TB Proprietary Corp. against Sposato Builders, Inc. and Heyser Estates (underlying case defendants or Sposato) for copyright

infringement and Lanham Act violations in the United States District Court for the Eastern District of Pennsylvania. The underlying case defendants asserted a counterclaim against plaintiffs for abuse of process. Following a bench trial in the federal court, plaintiffs' copyright claim was withdrawn and the Lanham Act claim was dismissed by the court.

Subsequently, Sposato's abuse of process counterclaim proceeded to trial. The jury returned a verdict in favor of Sposato and against Toll in the sum of $823,003.34, with $148,003.34 allocated for compensatory damages, and $675,000.00 for punitive damages. In addition to the verdict and judgment resulting from the underlying case, defendants', successful abuse of process counterclaim, counsel fees and costs were assessed against Toll by the court pursuant to the copyright act in the sum of $204,910.72.

Following dismissal of plaintiffs' appeals, Toll filed an insurance coverage suit against its insurance carrier, General Accident Insurance Company, in the Superior Court of Delaware to recover attorney fees, compensatory and punitive damages assessed against it in the abuse of process trial. Plaintiffs sought reimbursement for the assessed punitive damages contending that its liability was based solely on the actions of its attorneys, the defendants in this case. More specifically, Toll asserted it was vicariously liable only. The Delaware court found:

The facts quite clearly show that Toll was not only vicariously liable for the punitive damage sanction. Toll was directly as well as vicariously liable for filing suit against smaller competitors. Toll companies had a direct

involvement in the "abuse of process" claim because Toll was the driving force behind the litigation.

The court further found that Toll was not an unsophisticated client relying entirely upon counsel, and that it was aware of the course of that litigation. Based thereon, by opinion and order dated December 27, 1999, the Delaware court granted summary judgment in favor of General Accident and against Toll in its claim to have been only vicariously liable, and therefore entitled to insurance coverage for the punitive damages assessed against it. Toll's appeal was dismissed by the Supreme Court of Delaware making the decision final.

Among the plethora of pretrial filings by counsel in this case were cross motions for summary judgment. Following briefing and oral argument the Honorable Maurino J. Rossanese, Jr. entered orders dated February 5, 2009 and March 4, 2009 denying the respective motions for summary judgment "due to outstanding questions of fact."

This case proceeded to trial before the undersigned and a jury on September 23, 2010. At the conclusion of plaintiffs' case in chief, the defendants moved for a compulsory nonsuit. Without objection, the court deferred ruling on the motion and the evidence was concluded. Following the close of all evidence, the plaintiffs and defendants each moved that the court direct a verdict in its favor. On October 7, 2010, the court granted defendants, Panitch Schwarze and Meyer's, motion for a directed verdict and denied plaintiffs' motion.

Thereafter defendant, Akin Gump, filed a written Motion for a Directed Verdict. Since defendant Akin

Gump's successor liability would be predicated upon a finding against defendants, Panitch Schwarze and/ or Meyer, this court granted the motion by order dated December 6, 2010.

Plaintiffs' post-trial motion, consisting of 134 paragraphs, filed in a timely manner, was denied by order dated December 6, 2010. Thereafter plaintiffs filed a timely appeal. Toll's statement of errors complained of on appeal basically states that the court's entry of a directed verdict against it constituted errors of law, and abuse of discretion because it is contrary to law, evidence, and the law of the case.

The cross-appeal filed by defendants Panitch Schwarze on January 11, 2011, will not be addressed because a prevailing party is not aggrieved and may not appeal. *Epstein v. Saul Ewing, LLP*, 7 A.3d 303 (Pa. Super. 2010).

Under the doctrine of collateral estoppel, a litigant is precluded from presenting a "question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being re-litigated in a subsequent suit." *Day v. Volkswagen Werk Aktiengesellschaft*, 464 A.2d 1313, 1318 (Pa. Super. 1983). Collateral estoppel is based on the principle that a losing litigant deserves no rematch after a defeat in adversarial proceedings on an issue identical in substance to the one it seeks to raise subsequently. *Plaxton v. Lycoming County Zoning Hearing Board*, 986 A.2d 199, 208 (Pa. Cmwlth. 2009), allocatur denied, 608 Pa. 633, 8 A.3d 900 (2010). It is well settled that collateral estoppel is established when: (1) the issue decided in prior action is identical

to the one presented in a later action; (2) the prior action resulted in final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action or in privity with a party; and (4) the party against whom collateral estoppel is invoked had a full and fair opportunity to litigate. *Plaxton*, 986 A.2d at 208-209; *Grant v. GAF Corporation*, 608 A.2d 1047, 1053 (Pa. Super. 1992) aff'd without opinion, 536 Pa. 429, 639 A.2d 1170 (1994).

The decision of the Superior Court of Delaware in plaintiffs' insurance coverage case meets the collateral estoppel criteria. There was a final judgment on the merits; Toll was a party to the action and had a full and fair opportunity to litigate. The decision was based on Pennsylvania law that punitive damages are not covered by insurance unless the award was based solely on vicarious liability. *Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. 1995) allocatur denied, 546 Pa. 625, 683 A.2d 875 (1996). As such, plaintiffs are collaterally estopped in this case from asserting any contention contrary to the legal and factual findings of the Delaware court. More specifically, plaintiffs are collaterally estopped from asserting that their liability was vicarious only. The Delaware courts found that Toll's conduct was, at least in part, the reason it was found to have abused process and punitive damages were awarded. As will be reviewed in greater detail, the finding that Toll was directly liable or not solely vicariously liable for the abuse of process award, is identical to the issues in this case and defeat its claims. The Delaware court opinion is sufficient to establish the elements of collateral estoppel without the necessity of defendants producing evidence of the proceedings.

Toll asserts that this court is precluded from reaching this conclusion and is bound by Judge Rossanese's denial of defendants' motion for summary judgment raising the same issue. It has been long recognized under the coordinate jurisdiction rule that judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions, and that when a case is transferred between trial judges of coordinate jurisdiction, the transferee judge may not alter the resolution of a legal question previously decided. In deciding whether the coordinate jurisdiction rule applies, a court must consider the procedural posture of the case.

As our Supreme Court succinctly stated:

Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question. *Id.* (citations omitted). *Parker v. Freilich*, 803 A.2d 738, 745 (Pa. Super. 2002) allocatur denied, 573 Pa. 659, 820 A.2d 162(2003)

A motion for summary judgment and a motion for nonsuit or directed verdict are not motions of the same kind. Since the denial of the pretrial motions for summary judgment, plaintiffs and defendants have presented their evidence affording each an opportunity to address

"outstanding questions of fact." Such constitutes an intervening change in the facts and procedural posture of the case. As such, the coordinate jurisdiction or law of the case doctrine was not violated by granting the defendants' motion for a directed verdict based upon collateral estoppel at the conclusion of the evidence. It is noted that plaintiffs also filed a motion for a directed verdict.

Count I of the plaintiffs' amended complaint claims legal malpractice or professional negligence by the defendant attorneys was the basis of the finding of abuse of process and punitive damage award against it. Plaintiffs can succeed on this negligence claim only if it was not negligent or merely vicariously liable regarding the abuse of process finding.

The Comparative Negligence Act, 42 Pa. C.S. Section 7102(a), by its express terms is applicable only to actions which involve death or injury to a person or damage to property. *Keller v. Re/Max Centre Realty*, 719 A.2d 369 (Pa. Super. 1998). Professional liability cases, such as this, do not involve personal injury or property damage since the damages are strictly economic loss. *Wagner v. Orie & Zivic*, 636 A.2d 679, 681 n.2 (Pa. Super. 1994); *In re Jack Greenberg, Inc.*, 240 B.R. 486, 517 (1999). Therefore the Comparative Negligence Act does not apply in this case. Since legal malpractice claims are outside the act, contributory negligence applies. *Wescoat v. Northwest Savings Association*, 548 A.2d 619 (Pa. Super. 1988).

Under the contributory negligence doctrine, a party is totally barred from any recovery when their own negligence, however slight, contributes to their injury in a proximate way. *Elder v. Orluck*, 511 Pa. 402, 515 A.2d 517 (1986). Based upon the prior findings of the Delaware

court that, "Toll was directly as well as vicariously liable...," plaintiffs are estopped from contending or arguing that its attorneys, the defendants, were 100 percent negligent. Therefore plaintiffs' contributory negligence precludes any recovery on their professional negligence claim.

Count II of plaintiffs amended complaint seeks contribution from defendants for the damages it sustained as a result of the abuse of process and punitive damage award against it. Again, plaintiffs can only prevail on this claim if it is without fault.

The doctrine of in pari delicto is an equitable doctrine that provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim. *Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick and Cabot*, 458 A.2d 545 (Pa. Super. 1983) allocatur dismissed as improvidently granted 504 Pa. 177, 470 A.2d 525 (1984). In *Feld*, plaintiffs were convicted of perjury and falsification of evidence in a representation proceeding before the National Labor Relations Board. The complaint asserted their attorneys told them to lie and falsify documents. The court of common pleas sustained the attorneys' demurrer. The Superior Court held that because the plaintiff-clients also committed a wrong, they could not recover against the lawyers who advised them to do so. The Delaware court has found plaintiffs to be at fault, at least to some degree, thereby precluding plaintiff from succeeding on this claim as it did on Count I.

Abuse of process is an intentional tort. As such, contribution among joint tortfeasors being based upon equitable principles precludes an intentional tortfeasor from obtaining contribution for its own willful wrongdoing. *Canavin v. Naik*, 648 F. Supp. 268, 269 (E.D. Pa. 2004).

Plaintiffs' common law indemnification claim in Count III is also defeated by the Delaware court decision. Common law indemnification is an equitable fault shifting mechanism that moves the entire responsibility for damages from a party who, without any fault, has been required to pay because of the legal relationship to the party who was at fault. *City of Wilkes Barre v. Kaminski Brothers, Inc.,* 804 A.2d 89, 92 (Pa. Cmwlth. 2002) allocatur denied, 573 Pa. 717, 828 A.2d 351 (2003); *DiPietro v. City of Philadelphia,* 496 A.2d 407, 409-410 (Pa. Super. 1985). A party is not entitled to indemnity if the party seeking indemnity is at fault to any degree. *Builders Supply Co. v. McCabe,* 366 Pa. 322, 328. 77 A.2d 368, 371 (Pa. 1951). Indemnity is likewise unavailable to an intentional tortfeasor because it would permit them to escape liability for their own deliberate acts. *Canavin v. Naik,* 648 F. Supp. 268, 269 (E.D. Pa. 1986); *Northwestern Mutual Life Ins. Co. v. Babayan,* 2004 WL 1902516, 2004 U.S. Dist. LEXIS 17155 (E.D. Pa. 2004).

To establish its claim for indemnity, plaintiffs must establish defendants are primarily liable for the underlying abuse of process, and that plaintiffs were not liable to any degree for the underlying abuse of process. Plaintiffs are estopped from contending or arguing that it was not liable to any degree for the abuse of process by its own conduct.

Although Toll's statement of errors complained of on appeal raised numerous other reasons why this court erred in entering a directed verdict against it, they need not be addressed because none could have affected the result which was based on collateral estoppel.