# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

KS Development Company, L.P. and　　:
KS Development Company 2, L.P.　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　: No. 2302 C.D. 2015
　　　　　　　　　　　　　　　　　　　: Argued: June 6, 2016
Lower Nazareth Township and　　　　 :
AAA of Northampton County and　　　 :
Robert and Beverly Hoyer and　　　　 :
Woodmont Properties, LLC　　　　　　:
　　　　　　　　　　　　　　　　　　　:
Appeal of: Woodmont Properties, LLC　:


KS Development Company, L.P. and　　:
KS Development Company 2, L.P.,　　　:
　　　　　　　Appellants　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　: No. 2312 C.D. 2015
　　　　　　　　　　　　　　　　　　　: Argued: June 6, 2016
Lower Nazareth Township and　　　　 :
AAA of Northampton,　　　　　　　　 :
Robert and Beverly Hoyer,　　　　　　:
Wind-Drift Real Estate Associates,　　 :
Woodmont Properties　　　　　　　　 :


BEFORE:　HONORABLE RENÉE COHN JUBELIRER, Judge
　　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**　　　　　　　　　**FILED:　October 26, 2016**

　　　　In these consolidated appeals, KS Development Company, L.P. and

KS Development Company 2, L.P. (collectively KS Development), and Woodmont

Properties, LLC (Woodmont), seek to reverse the October 23, 2015 order of the

Court of Common Pleas of Northampton County (Trial Court) affirming the

January 14, 2015 decision and order of the Lower Nazareth Township Board of

Supervisors (Board), which denied KS Development's request for a curative amendment[1] to the Lower Nazareth Township Zoning Ordinance (Ordinance).

Before this Court, KS Development and Woodmont argue that the Ordinance totally excludes apartments as a permitted use within Lower Nazareth Township (Township) and that, in the alternative, the Ordinance fails to accommodate for the Township's fair share of multi-family housing. KS Development and Woodmont[2] each seek to cure the alleged constitutional defect in the Ordinance with amendments that would permit construction of apartments in the Office Park District (OP District), however, the restrictions each amendment places on apartment use within the OP District differ. For the reasons that follow, we affirm the order of the Trial Court.[3]

---

[1] *See* Sections 916.1, 909.1, and 609.1 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by Act of December 21, 1988, P.L. 1329, 53 P.S. §§ 10916.1, 10909.1, 10609.1 (providing procedures by which an aggrieved landowner may bring a challenge to the validity of an ordinance and seek a curative amendment before a township's governing body); *see also H.R. Miller, Co. Inc. v. Board of Supervisors*, 605 A.2d 321 (Pa. 1992) (discussing the relief available to an aggrieved landowner challenging the validity of an ordinance and distinguishing the constitutional infirmity that must be remedied by site specific relief from those ordinances that may be saved by applying the rule of severability); *Casey v. Zoning Hearing Board of Warwick Township*, 328 A.2d 464, 468 (Pa. 1974) (discussing the remedy of site specific curative amendments).

[2] Woodmont is an Intervenor-Appellant in this matter. AAA of Northampton County, Robert and Beverly Hoyer and Wind-Drift Real Estate Associates are Intervenor-Appellees. For simplicity, this opinion will refer to all arguments in favor of reversing the Trial Court's order and granting a curative amendment as arguments made by KS Development and all arguments in support of affirming the Trial Court's order as arguments made by the Appellees.

[3] A zoning ordinance limiting a landowner's absolute right to use private property is a valid exercise of a township's police power when it promotes the public health, safety or welfare, and its provisions are substantially related to the purpose the ordinance purports to serve. *Cleaver v. Board of Adjustment of Tredyffrin Township*, 200 A.2d 408, 411- 412 (Pa. 1964). A party challenging the constitutionality of a zoning ordinance bears the burden to demonstrate that the ordinance is infirm and must establish that it is arbitrary, unreasonable and unrelated to public health, safety, morals and general welfare; in determining whether the challenged ordinance is a valid exercise of the police power, the reasonableness of the restriction must be weighed against its confiscatory or exclusionary impact. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 820 A.2d 143, 151 (Pa. 2002).

In the seminal case *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 382 A.2d 105 (Pa. 1978), our Supreme Court fashioned an analytical framework to guide the courts in distinguishing between townships engaged in good faith planning and townships that sought to design zoning ordinances to exclude specific classes of housing within their borders.[4] *See also Appeal of Girsh*, 263 A.2d 395, 399 & n.4 (Pa. 1970) ("Municipal services must be provided somewhere, and if [the township] is a logical place for development to take place, it should not be heard to say that it will not bear its rightful part of the burden."); *National Land and Investment Co. v. Kohn*, 215 A.2d 597, 610 (Pa. 1965) ("Zoning is a means by which a governmental body can plan for the future—it may not be used as a means to deny the future.").

Pursuant to *Surrick*, where a challenge to a zoning ordinance alleges that the ordinance effects a *de facto* or partial exclusion of a class of housing, the courts employ a three-part test to determine the constitutionality of the zoning ordinance. The first step is to determine whether the community is in the path of growth and in a logical place for growth and development. *Surrick*, 382 A.2d at 108-109; *see also BAC, Inc. v. Board of Supervisors of Millcreek Township*, 633 A.2d 144, 147 (Pa. 1993). Factors to consider in analyzing whether the community is in the path of growth include: (1) projected population growth; (2) anticipated economic development; (3) access by major roads or public transportation; (4) the growth and development of neighboring municipalities; (5) proximity to a large

---

[4] The Court held in *Surrick*, when the issue under review is whether a zoning ordinance utilizes exclusionary or unduly restrictive regulations to exclude a class of housing, the analysis falls within the broader confines of a substantive due process analysis pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and in keeping with Article 1, Section 1 of the Pennsylvania Constitution. *Surrick*, 382 A.2d at 108. If a zoning ordinance is found to utilize exclusionary or unduly restrictive zoning regulations, it necessarily follows that the ordinance does not have the requisite substantial relationship to the public welfare and will not pass constitutional muster. *Id*.

metropolitan area; and (6) attempts by developers to obtain permission to build. *Surrick*, 382 A.2d at 111-112; *Heritage Building Group, Inc. v. Bedminster Township Board of Supervisors*, 742 A.2d 708, 711 (Pa. Cmwlth. 1999).

When it is demonstrated that a community is in the path of growth, the second step in the *Surrick* analysis is to determine the level of development in the area. 382 A.2d at 110. Factors to consider at this stage of the *Surrick* analysis include the municipality's population density data, its percentage of total undeveloped land and the percentage of its land available for the class of housing alleged to be unconstitutionally constrained. *BAC*, 633 A.2d at 146-147; *New Bethlehem Borough Council v. McVay*, 467 A.2d 395, 398 (Pa. Cmwlth. 1983).

If it is determined that the community is situated in the path of population expansion and is not already highly developed, then the final stage of the analysis asks whether the municipality has provided for its "fair share" of land for the class of housing under consideration. *Surrick*, 382 A.2d at 10-11; *Precision Equities, Inc. v. Franklin Park Borough Zoning Hearing Board*, 646 A.2d 756, 759-760 (Pa. Cmwlth. 1994).

In analyzing whether a *de facto* exclusion of a class of housing exists within the challenged zoning ordinance, the *Surrick* test does not replace but works in conjunction with the presumption that a zoning ordinance is constitutional and imposes a heavy burden upon the party who seeks to challenge its validity. 382 A.2d at 112 n.13; *National Land*, 215 A.2d at 607; *Montgomery Crossing Associates v. Township of Lower Gwynedd*, 758 A.2d 285, 287 (Pa. Cmwlth. 2000). The presumption of constitutionality, however, is just that—a presumption. This presumption is rebuttable where the burdened party presents substantial evidence of the exclusionary nature of the challenged zoning restrictions. *BAC*,

4

633 A.2d at 147 & 148; *Surrick*, 382 A.2d at 112 n.13; *National Land*, 215 A.2d at 607.

In the instant matter, KS Development relies on the *Surrick* analysis only in the alternative, arguing instead that the Township's zoning ordinance effects a *de jure*, or total, exclusion of apartments as a residential use rather than the *de facto* exclusion at issue in *Surrick* and its progeny.

KS Development concedes that, on its face, the Ordinance provides for apartments by right in the Medium Density Residential District (MDR District). Ordinance § 702(A)(9)(b). In addition to the MDR District, the Appellees contend that apartments are permitted in the Planned Industrial Commercial District (PIC District) and the Mixed-Use Overlay Light Industrial District (Mixed-Use Overlay). The Appellees' argument is premised on the contention that a personal care center, life care center, and a retirement village can all be considered "apartments," as that term is defined in the ordinance. The Appellees' argument strains credulity and belies the plain meaning and structure of the Ordinance.[5]

The term "dwelling" is defined in the Ordinance as, "[a] building used as non-transient living quarters. The term 'dwelling' shall not include boarding house, hotel, motel, hospital, nursing home, fraternity, sorority house or any group residence." Ordinance § 202. Apartments are listed within the Ordinance as one category of "dwelling," in addition to "modular home" and "single family detached dwelling," which includes mobile/manufactured homes, single family semi-detached dwelling, townhouse, and two-family detached dwelling. *Id*.

---

[5] The Statutory Construction Act, 1 Pa. C.S. §§ 1501-1991, is equally applicable to the interpretation of local ordinances and, of particular note in the instant matter, mandate that every ordinance "shall be construed, if possible, to give effect to all its provisions," that "when words of the [ordinance] are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," and that specific provisions control over more general ones. 1 Pa. C.S. §§ 1921(a) & (b), 1933.

Apartments are specifically defined within the Ordinance as "[t]hree or more dwelling units within a building. The individual dwelling units may be leased or sold for condominium ownership." *Id.* The Ordinance also defines the term "dwelling unit," providing:

> One dwelling occupied by only one family and a maximum of 2 persons who clearly function and are employed as domestic employees….Each dwelling unit shall have its own sanitary, sleeping and cooking facilities and separate access to the outside or to a common hallway or balcony that connects to outside access at ground level. A dwelling unit shall not include either or both of the following: a) two or more separate living areas that are completely separated by interior walls so as to prevent interior access from one living area to another, or b) two separate and distinct set of kitchen facilities.

*Id.* The Appellees contend that because apartments are defined as containing dwelling units and a personal care center, life care center, and retirement village may also contain dwelling units than each of these uses can be considered as including apartments. However, it is clear that under the Ordinance the presence of a "dwelling unit" does not mean that the use permitted is a "dwelling" and it is equally clear that "apartments" are "dwellings" whereas personal care centers, life care centers, and retirement villages are not "dwellings," but separately defined categories of use that contain residential features.

A "personal care center" is defined in the Ordinance as "[a] residential use providing residential and support services primarily to persons over age 60 and/or disabled and that is licensed by the Commonwealth of Pennsylvania." *Id.* A "life care center" is defined in the Ordinance as "[a] residential use designed and

6

operated exclusively for adults of 55 years of age or older and/or disabled persons that includes a nursing home[6] and certain limited support facilities intended specifically to serve the needs of these residents." *Id*. Finally, a "retirement village" is defined in the Ordinance as "[a] residential development limited exclusively to persons aged 55 years and older and their spouses." *Id*.

Each of these uses contains restrictions which make the use a use other than that specifically defined as an apartment. None of these uses are listed as a category of dwelling. Unlike the category of "single family detached dwelling" found within the larger definition of dwelling, apartments are not further defined with subcategories that apply greater restrictions to the definition; for example, a "townhouse" is defined as one category of "single family detached dwellings" and requires "[o]ne dwelling unit that is attached to 2 or more dwelling units, and with each dwelling unit being completely separated from each other by vertical fire resistant walls. Each dwelling unit shall have its own outside access. Side yards shall be adjacent to each end unit. Townhouses are also commonly referred to as row houses." *Id*. Instead of being defined as a type of apartment, like the Ordinance defines townhouses as a type of single family detached dwellings, the terms life care center, personal care center, and retirement village are all separately defined in the Ordinance's definitions section and delineated throughout the Ordinance where the Ordinance identifies uses permitted in each zoning district. *Id*.; *see also* Ordinance § 1002 (providing for uses permitted by right in the PIC District).

Therefore, we reject the Appellees' argument that the Ordinance's provision for personal care homes, life care centers, and retirement villages must be considered in evaluating whether the Ordinance provides for apartments.

---

[6] The definition of "dwelling" specifically excludes a "nursing home." Ordinance § 202.

However, KS Development's argument that the Mixed-Use Overlay does not permit apartments is equally unpersuasive. The Mixed-Use Overlay permits as a use "residential multi family/apartment dwelling on the uppers floors of a three, four or five story mixed use building," but does not allow residential uses on the ground floor of any building. Ordinance § 1110(D)(1) & (11). Apartments are clearly permitted in the Mixed-Use Overlay by the plain text of the Ordinance. The apartment use is not transformed into a use other than apartments by the requirement that the first floor of a building housing apartments contain a non-residential use; the colocation of uses does not redefine what uses are permitted within a district but regulates the density and configuration of the development of uses within a particular district. *Compare Montgomery Crossing Associates*, 758 A.2d at 287 ("We have long held that 'a shopping center constitutes simply a particular configuration of commercial uses, rather than a separate land use category in itself.' Therefore, although [appellant] seeks to erect a shopping center, its specific challenge is not that there is a ban on shopping centers, but rather on certain types of commercial uses that might conceivably occupy a shopping center.") (internal citations omitted).

KS Development argues that the facial allowance for apartments in the MDR District and the Mixed-Use Overlay does not negate the argument that the Township's zoning scheme affects a *de jure* exclusion of apartments because the use is subject to stringent restrictions, including limited gross density and large set asides, that render the actual development of apartments economically infeasible. This argument, however, conflates a *de jure* and a *de facto* challenge to an ordinance.

If an ordinance totally excludes a particular use, such as mobile homes or billboards, then the ordinance is *de jure* exclusionary; if an ordinance provides

8

for a particular use but applies additional restrictions on the use that have the effect of excluding or making  provision of the use illusory, than the ordinance is *de facto* exclusionary.  *See, e.g. Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009) (holding that a 25 square-foot size limitation on signs permitted in the commercial and industrial zoning districts constituted a *de facto* exclusion of billboards); *Atiyeh v. Board of Commissioners of Township of Bethlehem*, 41 A.3d 232, 236-237 (Pa. Cmwlth. 2012) (holding that an ordinance which fails to specifically provide for a "prison" use or to encompass that use within another use is *de jure* exclusionary); *Stahl v. Upper Southampton Township Zoning Hearing Board*, 606 A.2d 960 (Pa. Cmwlth. 1992) (holding that restrictions placed on the density of mobile home parks rendered the use economically infeasible and the provision of that use within the ordinance illusory, constituting a *de facto* exclusion of the mobile home use).

The Ordinance provides for apartments in the MDR and Mixed Use Overlay Districts.  Therefore, the Ordinance is not *de jure* exclusionary.  *See, e.g., Board of Supervisors of Northampton Township v. Gentsch*, 414 A.2d 1102, 1105 (Pa. Cmwlth. 1980) ("That a specific type of apartment structure is not permitted in no way allows the inference that the township improperly excludes a lawful use of property.") (internal citations omitted); *see also Upper Salford Township v. Collins*, 669 A.2d 335, 337 (Pa. 1995).  Accordingly, the issue before this Court is whether the Ordinance deprived KS Development of its constitutionally protected property interest without due process of law by effecting a *de facto* exclusion of apartments as a use within the Township.

KS Development contends that the *Surrick* test does not provide the proper analysis for resolution of the issue before this Court.  Instead, KS Development contends that the substantive due process analysis applicable where

9

an ordinance effects a *de facto* exclusion of a use controls because the issue is not whether the Ordinance provides for its "fair share" of apartments as a class of housing but whether the provision of apartments as a use on the face of the Ordinance is illusory when all the additional limitations imposed by the Ordinance on the apartment use are applied to the areas within the Township zoned for apartment use. We agree, in part.

In *Stahl*, this Court recognized that "[t]heoretically, a municipality could comply with its fair share responsibility and nevertheless indirectly preclude development of a type of housing by adopting restrictive dimensional requirements." 606 A.2d at 965. We held that where the property at issue can be reasonably used for the purposes required by the ordinance, the property owner could not legally complain because the ordinance prevented the owner from devoting the property to its most lucrative and profitable use; however, where the ordinance, through its particular requirements, made development of the permitted use economically impossible, then the municipality had precluded a legitimate use by indirect means and the ordinance was unconstitutional. *Id*. at 967. Applying this holding to the facts at issue in *Stahl*, we concluded that the ordinance impermissibly restricted the dimensional and density requirements for mobile home parks within the zoning district where the mobile home park use was permitted and that the unduly restrictive application of the ordinance effected a *de facto* exclusion of the mobile home use within the township. *Id*. The issue was not whether the township provided land for a class of housing in an amount sufficient for the growth and development of the township but whether it did so in a way that prevented that class of housing from ever being developed. *Compare H.R. Miller Co., Inc. v. Board of Supervisors of Lancaster Township*, 605 A.2d 321, 325-326 (Pa. 1992) (ordinance permitting quarrying in industrial zone was illusory because

10

500-foot setback made quarrying operations physically and economically impossible).

The abiding concern of *Stahl* is the distinction present not simply between *de jure* and *de facto* exclusionary challenges to an ordinance but also between the two types of *de facto* challenges to the constitutionality of an ordinance. *See Township of Exeter*, 962 A.2d at 659 & n.5. A *de facto* challenge to an ordinance regulating a residential use may be based on either the amount of land made available for a class of residential uses, or on the inability to develop the residential use on land provided in a sufficient amount for that class of use because of unduly restrictive conditions on development, or on both bases. *Id*. The difficulty in *de facto* exclusionary challenges when both arguments are presented is that the evidence for each often runs together, may at times intersect, and therefore the challenges may be improperly conjoined.

In the instant matter, the Board applied the *Surrick* analysis and determined that the Township was within the path of growth and highly developed. (Board Op. at 3.) The Trial Court reached the same conclusion, noting that what distinguished the analysis of growth within the Township by KS Development's expert, Martin Gilchrist, from the analysis of Appellees' expert, Terry DeGroot, is that KS Development's expert failed to treat active agricultural uses as developed land. (Trial Court Op. at 8.) Neither the Board nor the Trial Court addressed the third prong of the *Surrick* analysis—whether the municipality has provided for its "fair share" of land for apartments—because KS Development had failed to satisfy the second prong of the analysis by showing that the Township was underdeveloped.

We agree with the Trial Court that an analysis of the level of development in a township pursuant to the second prong of *Surrick*, which is

informed by examining the percentage of total undeveloped land and the percentage of land available for the class of housing alleged to be unconstitutionally excluded, lacks persuasive value when the analysis treats areas zoned for agricultural use and actively used for agricultural purposes as undeveloped. The MPC permits communities to enact ordinances protecting and promoting agricultural uses of land and identifies the protection and promotion of agricultural land and uses as one of the purposes of zoning in the Commonwealth. *See* Sections 603 & 604 of the MPC, 52 P.S. §§ 10603, 10604. This Court has held that land used for active agricultural and agricultural-related purposes is properly considered to be developed land for purposes of the second prong of the *Surrick* test. *Heritage Building Group, Inc. v. Plumstead Township Board of Supervisors*, 833 A.2d 1205, 1210 (Pa. Cmwlth. 2003). By failing to account for land used for agricultural purposes, KS Development's expert necessarily overestimated the amount of land available for development, and consequently concluded that the Township was underdeveloped. Therefore, we conclude that the Board and the Trial Court did not err by rejecting KS Development's challenge to the Ordinance because KS Development did not carry its burden to demonstrate that the Ordinance was *de facto* exclusionary of apartment uses under *Surrick*.

In support of its legal arguments, KS Development produced a large volume of evidence to demonstrate that the land zoned for development of apartments within the Township was inadequate to support the Township's fair share of apartments. However, as discussed above, KS Development was unable to show that the Township was underdeveloped, and therefore it was unnecessary for the Board and the Trial Court to examine the evidence in regard to the third prong of the *Surrick* test. Nevertheless, the evidence produced by KS Development in support of its argument that the Township's Ordinance worked to

12

exclude its fair share of apartment housing bears upon KS Development's argument that the Ordinance renders development of apartments economically infeasible through gross density, set asides, and other requirements and is, therefore still *de facto* exclusionary.

In the MDR District, in addition to lot and setback requirements common to all uses, the Ordinance requires 5 acres as the minimum tract area for use of a property for apartments and that no more than 15% of the tract area be used for apartments. Ordinance § 706(A). The Ordinance also imposes common open space requirements that become increasingly restrictive based on the amount of dwelling units contained in a development:

> Common open space shall be suitable for active recreation. Suitable for active recreation shall mean contiguous, and at least 75% of the open space having slopes of less than 10 percent and planted in grass and trees. For each 25 dwelling units, part of this area shall be graded to less than 4 percent slope to form at least 1 rectangular field of at least 300 feet in length and 100 feet in width.

Ordinance § 706(H)(3). KS Development presented testimony demonstrating that together these restrictions render the economics of developing apartment complexes within the Township infeasible. Despite this evidence, the Board found that:

> Based upon the presentations of [KS Development, its] witnesses and counsel, [Appellees], their witnesses and counsel, and the testimony of residents and citizens of the [Township], the [Board] finds that the [Township] Ordinance does not prohibit or restrict the use or development of [KS Development's] subject property.

13

> The [Board] finds that the averments suggesting the
> Zoning Ordinance is unduly restrictive, confiscatory,
> unlawfully restricts the development of apartments
> within the Township, and unlawfully restricts
> development of a reasonable range of multifamily
> dwellings in various arrangements within the Township
> are without merit.

(Board Op. at 2.) The Board's findings, as affirmed by the Trial Court, have support in both law and fact; although KS Development produced evidence showing that developing *apartment complexes* in accordance with the Ordinance was economically infeasible, this was not KS Development's burden. Instead, in order to carry its burden to demonstrate that the Ordinance is unconstitutional because it is *de facto* exclusionary, KS Development had to demonstrate that the development of *apartments* was economically infeasible.

Where a *de facto* challenge is brought against an ordinance based upon economic infeasibility rather than a township's failure to account for its fair share of housing, the evidence must account for basic legal principles governing exclusionary challenges. First, an ordinance may regulate the type and configuration of a use once it has provided for that use; limitations on the level of density permitted for the use, standing alone, do not establish that the ordinance is exclusionary. *Appeal of Girsh*, 263 A.2d at 245; *Gentsch*, 414 A.2d at 460; *Benham v. Board of Supervisors of Middletown Township*, 349 A.2d 484, 487-489 (Pa. Cmwlth. 1975). Second, where an ordinance has zoned sufficient land for a use but that land has been saturated by other uses, the inability to develop land does not amount to an unconstitutional prohibition of the use.[7] *Overstreet v.*

---

[7] The exception of course being, as held in *Stahl*, where land within a township was zoned to include the use only after the saturation of other uses rendered development of the newly zoned use infeasible. 606 A.2d at 963.

14

*Zoning Board of Schuykill Township*, 618 A.2d 1108, 1115 (Pa. Cmwlth. 1992); *Appeal of Groff*, 274 A.2d 574, 575 (Pa. Cmwlth. 1971). Third, an ordinance will not be found unconstitutional merely because it deprives the owner of the most lucrative and profitable uses; as long as the property in question may be reasonably used for the purposes permitted under the ordinance, the owner may not legally complain. *Smith v. Hanover Zoning Hearing Board*, 78 A.3d 1212, 1219 (Pa. Cmwlth. 2013); *Montgomery Crossing*, 758 A.2d at 290; *Kirk v. Zoning Hearing Board of Honey Brook Township*, 713 A.2d 1226, 1231 (Pa. Cmwlth. 1998). Finally, the fact that an ordinance applies a significant amount of restrictions to development of a particular use, standing alone, is insufficient to show that the ordinance is arbitrary, unreasonable and lacking a substantial relationship to the public health, safety and welfare; instead, evidence must be produced to demonstrate that the restrictions lack a legitimate purpose. *Keinath v. Township of Edgmont*, 964 A.2d 458, 462 (Pa. Cmwlth. 2009); *McGonigle v. Lower Heidelberg Township Zoning Board*, 858 A.2d 663, 669 (Pa. Cmwlth. 2004); *Hock v. Board of Supervisors of Mount Pleasant Township*, 622 A.2d 431, 434 (Pa. Cmwlth. 1993) (examining the reasonableness of the ordinance by determining whether the restriction imposed serves the stated purpose of the ordinance and whether the purpose could be achieved by less restrictive means).[8]

---

[8] *See also In re Petition of Dolington Land Group*, 839 A.2d 1021 (Pa. 2003):

> In the period since our decision in *Surrick*, factors previously of little or no concern have assumed preeminence. These include but are not limited to an increased awareness of the environmental sensitivity and public value of undisturbed wetlands, floodplains, slopes, and woodlands; the growing national and state-wide awareness of the true costs of sprawl and of the need to implement contrary land use policies; and the growing recognition of the importance of agricultural lands and activities and of prime agricultural soils. Each of these factors acts to counterbalance to some extent the desire for intense development and each of these

The evidence presented by KS Development failed to distinguish between the provision of a use and the provision for a host of variations on the configuration of that use, failed to show that any lack of development of the apartment use within the Township was due to the Ordinance rather than the development of other uses where apartments were permitted, and failed to demonstrate that the Ordinance rendered development of apartments within the Township infeasible rather than simply prevented development of apartments in a manner that would provide KS Development with the most profitable use of land. Finally, and most important, KS Development did not demonstrate that the restrictions placed on the development of apartments within the Township's MDR and Multi-Use Overlay Districts were unreasonable and inconsistent with the stated purpose of those districts.[9] While it is clear from the plain text of the Ordinance that the development of apartments within the Township is highly regulated, the Township's intensive restrictions on the manner in which apartments are developed was not shown to be unreasonable and unrelated to public health, safety, morals and general welfare. Therefore, we conclude the Trial Court did not err in affirming the Board's conclusion that KS Development's challenge to the

> factors can properly serve in an appropriate municipal or multimunicipal context as a legitimate justification for the imposition of carefully tailored restrictions of the type, design, location, and intensity of permitted development.

*Id.* at 1032-1033.

[9] *See* Ordinance § 701 (MDR District) ("Purpose. To provide for a variety of carefully designed housing types at medium densities. To make sure that varied housing types are compatible with any existing single family detached houses. To make sure the street system of the Township and other community facilities and services are fully able to handle moderately dense growth in an area. To work to encourage affordable housing, especially for young families and senior citizens. To encourage these areas to be developed for townhouses and apartments only after both public water and sewer service is available."); Ordinance § 1110 (Mixed-Use Overlay District Purpose); *see also* Ordinance § 101 (Purposes and Objectives of Ordinance).

16

Ordinance as unduly restrictive of the development of various arrangements of multi-family dwellings was without merit.

Accordingly, we hold that the Ordinance is not *de jure* or *de facto* exclusionary because the Township has provided for its fair share of apartment housing and has not used other restrictions within the Ordinance to render the development of apartments an illusory or economically infeasible prospect. Our holding is based on the evidence presented in support of KS Development's request for a curative amendment to construct apartments within the OP District, rather than the Ordinance as applied to a property within the area zoned for apartment use, and on the evidence of the growth and development of the Township as currently reflected in the record.

_____
**JAMES GARDNER COLINS, Senior Judge**

Judge Covey did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| KS Development Company, L.P. and KS Development Company 2, L.P. | : : : |
| v. | : No. 2302 C.D. 2015 : |
| Lower Nazareth Township and AAA of Northampton County and Robert and Beverly Hoyer and Woodmont Properties, LLC | : : : : : |
| Appeal of: Woodmont Properties, LLC | : |
| | |
| KS Development Company, L.P. and KS Development Company 2, L.P., Appellants | : : : |
| v. | : No. 2312 C.D. 2015 : |
| Lower Nazareth Township and AAA of Northampton, Robert and Beverly Hoyer, Wind-Drift Real Estate Associates, Woodmont Properties | : : : : |

## O R D E R

AND NOW this 26th day of October, 2016, the October 23, 2015 order of the Court of Common Pleas of Northampton County in the above-captioned consolidated matters is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**