IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Circleville Road Partners, LP,             :
                    Appellant              :
                                           :
            v.                             :
                                           :
Zoning Hearing Board of the Township       :
of Ferguson                                :
                                           :   No.  1717 C.D. 2019
            v.                             :
                                           :   Argued:  October 15, 2020
Township of Ferguson                       :
                                           :
            v.                             :
                                           :
Residential Housing Land, LLC and          :
Residential Housing Development, LLC        :
                                           :
            v.                             :
                                           :
Pine Hall Development Company f/k/a         :
Pine Hall Development Corporation          :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: December 31, 2020


            Circleville Road Partners, L.P. (CRP) appeals from the October 21, 2019 order of the Court of Common Pleas of Centre County (trial court) affirming the decision of the Zoning Hearing Board of the Township of Ferguson (ZHB), which

denied CRP's substantive validity challenge to an amendment to the section of the Ferguson Township's zoning ordinance that comprises the Traditional Town Development (TTD) District (TTD Amendment).

At the center of this dispute lies the fact that the TTD zoning district essentially encompasses only two parcels of property that are owned by two developers. Although the TTD Amendment equally affords both developers with more relaxed developmental standards and an enhanced opportunity for increased development, the TTD Amendment, as applied to the facts and circumstances of this case, could conceivably provide one developer with a more advantageous chance for economic gain. However, this can be said of all legislation that is economic and developmental in nature, *i.e.*, some businesses will be able to capitalize from the legislation to a greater degree or extent than others, but this fact, alone, does not render a law unconstitutional. Because we conclude that the TTD Amendment does not violate substantive due process, does not constitute illegal spot zoning or unlawful special legislation, and is not void for vagueness, we affirm the trial court's order.

**Background**

In its decision, the ZHB set forth the procedural and factual background of this case as follows:

> 1. The [a]pplicant is [CRP] of 125 Lyndhurst Circle, Wexford, Pennsylvania.
>
> 2. The [i]ntervenors are Residential Housing Land, LLC and Residential Housing Development, LLC (hereinafter jointly "RHD").

2

3.     CRP is the owner of a certain parcel of real estate located at the intersection of Blue Course Drive and Circleville Road[,] hereinafter referred to as the "Turnberry Tract."

4.     RHD is the equitable owner of that certain parcel of real estate, containing approximately 90 acres, at the intersection of Blue Course Drive and Old Gatesburg Road, hereinafter referred to as the "Pine Hall Tract."

5.     The Turnberry Tract and the Pine Hall Tract are adjoining properties that share a common boundary line.

6.     The Turnberry Tract and the Pine Hall Tract are both zoned "TTD[.]"

7.     In 2010, Ferguson Township approved a master plan known as the "Pine Hall Master Plan" for the Pine Hall Tract, subject to certain conditions and modifications.

8.     Subsequent to 2010, two phases of the Pine Hall Tract were submitted and approved by the Ferguson Township Board of Supervisors.

9.     The remainder of the Pine Hall Tract has not been developed due to a downturn in economic conditions.

10.     In December 2011, the Township Board of Supervisors approved CRP's General Master Plan for the Turnberry Tract, subject to certain conditions and modifications.

11.     CRP has expended financial resources to develop a portion of the Turnberry Tract in accordance with its General Master Plan.

12.     At the present time the Turnberry Tract is approximately 50% developed.

13.     CRP has since sold portions of the Turnberry Tract to third parties.

14. Beginning in 2015, RHD met with the township staff to discuss modifications of the Pine Hall Master Plan so that its stalled development could move forward.

15. On February 2, 2017, the Township held a Charette that was duly noticed and open to the public for the purpose of discussing the Pine Hall Master Plan.

16. On March 16, 2017, RHD applied to Ferguson Township for a text amendment . . . to [s]ection 27-701 of the zoning ordinance[, *i.e.*, the TTD Amendment].

17. On March 8, 2017, the Ferguson Township Planning Commission held a meeting at which counsel for RHD made a presentation in favor of the adoption of the TTD Amendment.

18. At the June 26, 2017 Planning Commission meeting, a presentation was made on behalf of RHD by a landscape architect.

19. On September 5, 2017, the Township Board of Supervisors held a public hearing on the TTD Amendment.

20. On September 18, 2017, the Board of Supervisors conducted the public hearing, and at its conclusion the Board approved the TTD Amendment (Ordinance Number 1034-2017), to [s]ection 27-701 of the zoning ordinance.

21. [The TTD Amendment] made the following modifications to the section of the zoning ordinance involving "Traditional Town Developments":

A. Increased the number of unrelated persons from 3 to 4 who may inhabit a single[-]family attached, detached and semi-detached residential unit under certain circumstances;
B. Provided a process whereby a developer may request modifications to design standards where specific physical conditions on the property justify such modifications;
C. Reduce[d] from 100% to 50% the number of townhouse units that must be accessed by rear garages, and allows that other 50% to be accessed by front garages;

4

D.      Reduce[d] from 100% to 25% the number of commercial buildings that must have second story residential or office uses;

E.      Increase[d] from 5 stories to 8 stories the maximum permitted height of multi-family buildings;

F.      Reduce[d] from 15% to 5% the minimum percentage of permissible single[-]family detached dwellings;

G.      Increase[d] from 30% to 50% the maximum percentage of permissible multi-family dwellings;

H.      Reduce[d] from 200 feet to 150 feet the minimum block depth/width size;

I.      Increase[d] from 4 to 6 the maximum number of townhome dwellings on a single lot;

J.      Eliminate[d] the mandatory mix of single family and townhome[] unit[s] within a block;

K.      Reduce[d] the permissible size of lots for single[-]family detached dwellings, single[-]family attached dwellings and multi-family dwellings;

L.      Increase[d] the permissible size of lots for commercial uses;

M.      Increase[d] the permissible size of commercial buildings and retail buildings;

N.      Increase[d] the permissible size of anchor retail units;

O.      Eliminate[d] any maximum limitation of residential units in a single structure;

P.      Increase[d] the maximum impervious lot coverage to 85%;

Q.      Reduced from 40 feet to 10 feet the front yard setback for garages;

R.      Reduce[d] from 5 feet to 0 the rear yard setback;

S.      Eliminate[d] the 50% transparency requirement for first floors of certain retail uses;

T.      Increase[d] from 60% to 90% the off-street parking requirements, and hence the capacity of parking compounds;

U.      Eliminate[d] the maximum required on-site parking spaces;

V.      Allow[ed] stormwater management facilities to be include[ed] in areas designated for open or public spaces; [and]

W.      Remove[d] the prohibition of drive[-]through services.

22. On October 13, 2017, [] CRP filed with [the ZHB] a timely substantive validity challenge to [the TTD Amendment].

(Findings of Fact (F.F.) Nos. 1-22.)

In its substantive validity challenge, CRP contended that the TTD Amendment is unconstitutionally vague, not substantially related to a legitimate government interest, and constitutes illegal spot zoning and/or illegal special legislation. The primary argument underlying CRP's challenges was that the TTD Amendment was enacted at the request of RHD and was designed specifically to benefit RHD and its development of the Pine Hall Tract. CRP also asserted that the TTD Amendment created unclear and inconsistent standards for the grant of modifications, thus rending it void for vagueness.

In rejecting these claims, the ZHB generally concluded that the Board of Supervisors of Ferguson Township "acted within its authority in making the amendments to fashion the TTD ordinance as it best saw fit the needs of the [T]ownship." (ZHB's decision at 14.) The ZHB acknowledged that the "TTD Amendment covered two large tracts, one that was subsequently purchased and has now been partially developed by [CRP], and the second which has been partially developed, and the residue of which is now under contract to [RHD]." *Id.* at 15. Nonetheless, the ZHB concluded that "[t]he [A]mendment is not directed at one particular property, but applies to the TTD zoning district as a whole[,] . . . including undeveloped lands still owned by [CRP] and the undeveloped lands under contract to [RHD]." *Id.* The ZHB further concluded that the TTD Amendment "is not confiscatory" in that it "does not eliminate any rights that [CRP] previously had in its property"; CRP "can proceed to develop the remainder of the property in the exact fashion it had originally intended"; and the TTD Amendment "does not increase the restrictions of the zoning ordinance, but rather loosens them." *Id.* at 15-16.

6

Moreover, the ZHB noted that, under section 107 of the Pennsylvania Municipalities Planning Code (MPC),[1] a "[t]raditional [t]own [d]evelopment" district contains mixed uses and is configured to integrate residential units and commercial uses in a single district. The ZHB found that "[t]he stated purpose of the Ferguson Township TTD ordinance closely follows the language of the MPC." *Id.* at 13. The ZHB further commented:

> While it is clear that [CRP] strongly disagrees with the direction in which the [TTD Amendment] takes the TTD ordinance, it is the legislative function of the Board of Supervisors to enact zoning ordinances and to amend them. The challenge raised by [CRP] with respect to the design features of the TTD Amendment boil down to matters of degree. While the TTD Amendment may arguably create a Traditional Town Development [district] that is off the mark of what the legislature ideally intended, this Board[, *i.e.*, the ZHB] cannot say that the amended ordinance is an invalid exercise of the authority of the Board of Supervisors.

*Id.* at 14.

Finally, the ZHB provided a comprehensive discussion of the modification provisions in section 3 of the TTD Amendment in relation to the modification provisions of the original TTD ordinance. The ZHB concluded that the portions of the TTD Amendment in this respect were clear and unambiguous and, therefore, were not void for vagueness. (ZHB's decision at 9-11.)

For these reasons, the ZHB denied CRP's substantive validity challenge to the TTD Amendment.

CRP then filed a land use appeal with the trial court. Without receiving additional evidence, the trial court affirmed the decision of the ZHB. In so doing, the

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10107.

7

trial court noted that a "TTD is a mixed-use zoning district" and agreed with the ZHB's factual findings and legal conclusion that the purpose of the TTD Amendment was consistent with the definition of a "Traditional Neighborhood Development" in the MPC. (Trial court op. at 4-5.) The trial court reiterated the stated purpose of the TTD district, quoting the ordinance's overall intent in creating the TTD district "to produce sustainable, long term development which enhances the quality of life . . . to ensure the highest possible economic and social benefits for all residents . . . [and] to encourage innovation and promote flexibility, economy, and ingenuity in development and to be consistent with the goals and objectives enumerated by the provisions of Article VII -A of the [MPC]." (Trial court op. at 5, quoting Ordinance, §27-701(1)(A)-(B)).[2] *See Circleville Road Partners, L.P. v. Township of Ferguson*,

---

[2] Section 702-A(1)(ii) of the MPC "permit[s] the creation of a traditional neighborhood development in any part of the municipality or in one or more specified zoning districts." 53 P.S. §10702-A(1)(ii). Article VII-A of the MPC, added by the Act of June 23, 2000, P.L. 495. Section 107 of the MPC, in turn, defines "Traditional Neighborhood Development" as

> an area of land typically developed for a compatible mixture of residential units for various income levels and nonresidential commercial and workplace uses, including some structures that provide for a mix of uses within the same building. Residences, shops, offices, workplaces, public buildings and parks are interwoven within the neighborhood so that all are within relatively close proximity to each other. Traditional neighborhood development is relatively compact and oriented toward pedestrian activity. It has an identifiable center and a discernible edge. The center of the neighborhood is in the form of a public park, commons, plaza, square or prominent intersection of two or more major streets. Generally, there is a hierarchy of streets laid out with an interconnected network of streets and blocks that provides multiple routes from origins to destinations and are appropriately designed to serve the needs of pedestrians and vehicles equally.

53 P.S. §10107.

209 A.3d 1125, 1137 (Pa. Cmwlth. 2019) (concluding that the TTD Amendment constituted a zoning map change, rather than a text amendment, and that the TTD Amendment "did not change the nature of the TTD as a mixed[-]use district nor did [it] create a new land use category").

Next, the trial court stated that it

> has gleaned from the ZHB's findings of fact that the catalyst for the TTD Amendment was a need to finish developing the Pine Hall Tract which was frustrated by the TTD ordinance as it was previously enacted. Despite this singular goal, the TTD Amendment, on its face and within the context of the entire TTD ordinance, is not arbitrary, unreasonable, and bears a substantial relationship to the public health, safety, morals, and general welfare. The TTD Amendment is not unduly restrictive or exclusionary [because] it actually expands the uses in a TTD zoning district. Also, [CRP] did not receive disparate treatment with the enactment of the TTD Amendment simply because it went through modification procedures provided in the previously enacted TTD ordinance to request the modifications to [greater] develop its land, as opposed to RHD proposing a text amendment to achieve the same goals.

(Trial court op. at 6.)

In making this determination, the trial court cited case law from this Court holding that the state of mind of a legislative body in amending a zoning ordinance is not relevant to determining its validity and that the strenuous lobbying by a supporter does not itself render the amendment unlawful special legislation. (Trial court op. at 5.) Moreover, the trial court concluded that "the TTD Amendment does not constitute spot zoning or special legislation because the Pine Hall Tract was not singularly rezoned, and the TTD Amendment does not prevent [CRP], or any other landowner, from a lawful use of [its] land." (Trial court op. at 8.) Ultimately, the trial court agreed "with the findings of the ZHB that the TTD Amendment is

9

applicable to the TTD zoning district in its entirety, and is not directed toward only the Pine Hall Tract." *Id.*

Finally, the trial court determined that the modification provisions of the TTD Amendment, when compared to or considered in light of the modification provisions of the prior TTD ordinance, were "not inconsistent and would not cause a person of common intelligence to guess at their meaning." (Trial court op. at 6.) In so deciding, the trial court noted that section 13 of the TTD Amendment repealed the existing modification provisions within the original TTD ordinance to the extent they were irreconcilable. *Id.*

CRP then filed an appeal with this Court.[3]

## Discussion

First off, CRP contends that the trial court committed an error of law in failing to declare the TTD Amendment unconstitutional because it was enacted with no express public purpose but, instead, was passed only to implement RHD's specific development plans. CRP states that the TTD Amendment does not contain any recitals addressing a purpose related to the promotion of public health, safety, and welfare and cites an excerpt from the trial court's opinion, wherein the trial court "gleaned from the ZHB's findings of fact that the catalyst for" and the "singular goal" of "the TTD Amendment was a need to finish developing the Pine Hall [T]ract which was frustrated by the TTD ordinance as it was previously enacted." (CRP Br. at 36; Trial court op. at 6.) On this note, CRP asserts that the TTD Amendment does not

---

[3] This Court's scope of review in a zoning case where, as here, the trial court did not take additional evidence is limited to reviewing whether the trial court committed an error of law or abused its discretion. *Shaw v. Township of Upper St. Clair*, 71 A.3d 1103, 1107 n.5 (Pa. Cmwlth. 2013).

10

bear a substantial relationship to any legitimate public purpose and, therefore, violates substantive due process.

"A zoning ordinance is presumed to be valid. Therefore, one challenging the zoning ordinance has the heavy burden of establishing its invalidity. Where the validity of the zoning ordinance is debatable, the legislative judgment of the governing body must control." *Woll v. Monaghan Township*, 948 A.2d 933, 938 (Pa. Cmwlth. 2008). "In Pennsylvania, the constitutionality of a zoning ordinance is reviewed under a substantive due process analysis." *Plaxton v. Lycoming County Zoning Hearing Board*, 986 A.2d 199, 204 (Pa. Cmwlth. 2009). "Under such analysis, the party challenging the validity of provisions of the zoning ordinance must establish that they are arbitrary and unreasonable and have no substantial relationship to promoting the public health, safety, and welfare." *Id.*

Further, "the exercise of judgment in regard to zoning regulations will not be interfered with except where there is obviously no relation to health, safety, morals or general welfare." *Ethan-Michael, Inc. v. Board of Supervisors of Union Township*, 918 A.2d 203, 210 (Pa. Cmwlth. 2007). If there is any reasonably conceivable state of facts that could provide a rational basis for the zoning law, the challenged law will be upheld. *Corteal v. Department of Transportation*, 821 A.2d 173, 177 (Pa. Cmwlth. 2003). Importantly, a legislative body need not articulate its reasoning at the moment a particular decision is made, and a legislative choice may be based on rational speculation unsupported by evidence or empirical data. *See Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 478 (Pa. Cmwlth. 2006); *Corteal*, 821 A.2d at 177. Because the courts do not require a legislative body to articulate its reasons for enacting a law, it is entirely irrelevant for constitutional purposes whether the conceived reason for the

11

challenged distinction actually motivated the legislature. In *Takacs v. Indian Lake Borough Zoning Hearing Board*, 11 A.3d 587 (Pa. Cmwlth. 2010), this Court recounted:

> The fact that rezoning is done at the request of a landowner does not, in and of itself, invalidate a rezoning. *Schubach v. Silver*, 336 A.2d 328, 337 (Pa. 1975). Indeed, in *Plaxton*[, 986 A.2d at 210], this [C]ourt stated that: (1) the state of mind of a legislative body in amending a zoning ordinance is not relevant to determining its validity; (2) the amendment must stand or fall on its own terms; and (3) even the strenuous lobbying by supporters does not itself render the amendment special legislation.

*Takacs*, 11 A.3d at 594.

Here, we discern from text of the TTD Amendment that it was enacted to encourage greater economic development, which is a legitimate state interest. *See Robinson Township v. Commonwealth*, 83 A.3d 901, 954 (Pa. 2013). The TTD Amendment accomplishes this goal by reducing the developmental restrictions in the original TTD ordinance and by allowing for increased dimensional standards. *See* F.F. No. 21A.-W. Because the measures employed by the Board of Supervisors in the TTD Amendment clearly advance the goal of obtaining greater development and economic prosperity, we conclude that there is a substantial relationship between what the Amendment permits and endorses with the object that it seeks to obtain. Although RHD initiated and requested the Board of Supervisors to enact the TTD Amendment, as stated above, this does not negate or otherwise alter the fact that the TTD Amendment, on its face, substantially furthers a legitimate governmental interest. Therefore, we conclude that CRP's substantive due process claim fails.

Second, CRP asserts that the TTD Amendment constitutes illegal spot-zoning and special legislation because it was enacted "for no reason or purpose other

12

than to favor the private interests of [RHD] while disregarding a community[-]wide perspective." (CRP Br. at 49.) CRP further contends that CRP's "[p]roperty was the only property assembled to be developable as a TTD other than Turnberry in the TTD [z]oning [d]istrict, and as Turnberry is being developed pursuant to the [original] TTD [o]rdinance, the TTD Amendment effectively applies only to [RHD's] [p]roperty." *Id.* at 50. As such, CRP argues that the TTD Amendment is discriminatory and confiscatory in nature.

Under Pennsylvania law, spot zoning is the unreasonable or arbitrary zoning classification of a small parcel of land, dissected or set apart from surrounding properties, with no reasonable basis for the differential zoning. *Penn Street, L.P. v. East Lampeter Township Zoning Hearing Board*, 84 A.3d 1114, 1120 (Pa. Cmwlth. 2014). "The most determinative factor in an analysis of a spot zoning question is whether the parcel in question is being treated unjustifiably different from similar surrounding land, thus creating an 'island' having no relevant differences from its neighbors." *Id.* at 1121 (citation omitted). Somewhat similarly, "[s]pecial legislation is described as an ordinance that is unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that it [is] aimed at [a] particular piece of property. The most important inquiry then, is whether a particular piece of property is subject to discriminatory treatment." *Plaxton*, 986 A.2d at 210 (internal citations omitted). However, "[a]n amendatory zoning ordinance constitutes special legislation only where it is enacted to prevent a lawful use of land permitted under the existing ordinance." *Id.* at 210-11 (internal citation omitted).

Here, we agree with the trial court's conclusion that "the TTD Amendment does not constitute spot zoning or special legislation because the Pine Hall Tract was not singularly rezoned, and the TTD Amendment does not prevent

13

[CRP], or any other landowner, from a lawful use of [its] land." (Trial court op. at 8.) We further note the ZHB's uncontested finding that, at the time of the zoning proceedings, CRP only developed approximately 50% of the Turnberry Tract, (F.F. No. 12); consequently, the remaining portion of the land can theoretically be developed under the standards enunciated in the TTD Amendment. Moreover, as the trial court and ZHB concluded, "[t]he TTD Amendment is not unduly restrictive or exclusionary [because] it actually expands the uses in a TTD zoning district," (Trial court op. at 6); the TTD Amendment "is not confiscatory" in that it "does not eliminate any rights that [CRP] previously had in its property"; CRP "can proceed to develop the remainder of the property in the exact fashion it had originally intended"; and the TTD Amendment "does not increase the restrictions of the zoning ordinance, but rather loosens them." (ZHB's decision at 15-16.) *See Circleville Road Partners, L.P.*, 209 A.3d at 1137 (concluding that "the amendments imposed by [the TTD Amendment] apply to [RHD's] property, [CRP's] property and any other property within a TTD in a mixed[-]use district and, therefore, do not make a substantial change to the manner in which one tract of land is zoned as compared to other properties similarly zoned").

Based on these determinations, and the undisputed findings of fact that support them, we conclude that CRP's spot zoning and special legislation claims lack merit. *See Plaxton*, 986 A.2d at 210-211 (rejecting claims of illegal spot zoning and special legislation where the amendatory ordinance had no confiscatory application and was not enacted to prevent any lawful use of the property; instead, the property at issue was not rezoned at all by the amendatory ordinance, and the amendatory ordinance merely permitted a new use in a zoning district); *Klein v. Council of City of Pittsburgh*, 643 A.2d 1107, 1118 (Pa. Cmwlth. 1994) (rejecting claims of illegal spot

zoning and special legislation where an ordinance permitted "medical private use helistops in conjunction with hospitals as a conditional use in six different zoning districts"; the ordinance "d[id] not rezone [Shadyside Hospital's] property nor single it out for preferential treatment among other area hospitals; and, "[i]n fact, [the ordinance] confer[red] no benefit on Shadyside Hospital that [was] not similarly bestowed on any other city hospital"). We retain this conclusion despite the possibility that RHD, as a practical matter, may be committed to certain developmental projects that were designed and blueprinted under the prior version of the TTD ordinance and that it may be economically unfeasible for RHD to change course and redesign those developmental projects under the relaxed standards of the TTD Amendment.

In so deciding, this Court reiterates that the fact that a zoning change is done at the request of a landowner does not, in and of itself, invalidate an amendment to a zoning ordinance. *See Takacs*, 11 A.3d at 594. Further, "an ordinance will not be found unconstitutional merely because it deprives the owner of the most lucrative and profitable uses; as long as the property in question may be reasonably used for the purposes permitted under the ordinance, the owner may not legally complain." *KS Development Company, L.P. v. Lower Nazareth Township*, 149 A.3d 105, 116 (Pa. Cmwlth. 2016).[4] As previously stated by this Court, "[i]f the validity of a zoning ordinance is debatable, it must be permitted to stand." *Takacs*, 11 A.3d at 594. We conclude that this is the situation here.

_____

[4] Perhaps notably, CRP does not advance a claim that the TTD Amendment was the byproduct of unlawful contract zoning, *see Knight v. Lynn Township Zoning Hearing Board*, 568 A.2d 1372, 1375-77 (Pa. Cmwlth. 1990); *Lake v. Zoning Hearth Board of Warrington Township* (Pa. Cmwlth., No. 1061 C.D. 2013, filed March 18, 2014) (unreported), slip op. at 13-14, nor does it assert a *de facto* exclusionary claim. *See KS Development Company, L.P.*, 149 A.3d at 113-17.

15

Third and last, CRP asserts that section 3 of the TTD Amendment is void for vagueness because it is "inconsistent with the thoughtful, goal[-]oriented modification provisions in the original ordinance" and "results in unclear . . . and irrational standards for the grant of modifications." (CRP Br. at 54.)

"A law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Fabio v. Civil Service Commission of City of Philadelphia*, 414 A.2d 82, 84 (Pa. 1980) (quotation marks and citation omitted). "The void for vagueness doctrine incorporates the due process notions of fair notice or warning." *Id.* at 85

Here, section 3 of the TTD Amendment provides as follows:

SECTION 3. Section 27-701.2 of the Zoning Ordinance is hereby amended to add the following to the end of that section:

The Board of Supervisors may allow for modification of the design standards applicable to a [TTD] provided for in this Section[,] 27-701, including, but not limited to compactness, pedestrian orientation, street geometry or other related design features, in accordance with the standards applicable to the grant of modifications under Chapter 22, Subdivision and Land Development, §22-105.

(Reproduced Record (R.R.) at 729a.)

Section 22-105 of the Ordinance provides for modifications, in part, as follows:

An applicant may request the Board of Supervisors to grant a modification of the requirements of one or more provisions of this Chapter if the literal enforcement will exact undue hardship because of peculiar conditions to the land in question; provided, that such modification will not be contrary to the public interest and that the purpose of the intent of this Chapter is observed . . . .

16

(R.R. at 363a.)

While it is difficult for us to discern the exact manner in which CRP asserts that section 3 of the TTD Amendment is vague, based on the plain language of that provision, it is apparent that the Board of Supervisors may grant a modification for the design features applicable to the TTD zoning district. And, in referencing section 22-105 of the Ordinance, section 3 of the TTD Amendment simply incorporates the governing legal standards used to grant such a modification. Although the provisions of original ordinance pertaining to TTD zoning district set forth 12 different "design standards," including but not limited to, on-street parking, public space, and natural building techniques, (R.R. at 384a-85a), these subjects, in general, are technically still available for modification under section 3 of the TTD Amendment. However, to the extent that these subjects are inconsistent with the TTD Amendment, section 13 of the TTD Amendment states that "[a]ny ordinances or parts of ordinances inconsistent herewith are hereby repealed." (R.R. at 734a.) An ordinance is not void for vagueness merely because the reader may have to cross-reference and compare different sections or parts of that ordinance. *See Halfacre v. Kelley*, 594 S.W.3d 36, 39 (Ark. 2020) ("With respect to [the defendant's] claim that the reference to robbery in the aggravated-robbery statute rendered the statute 'vague,' the fact that one statute referenced the other did not prevent a person of ordinary intelligence from having fair warning of what was prohibited."). Therefore, we find no merit in CRP's contention that the TTD Amendment is unconstitutionally vague.

Accordingly, for the above-stated reasons, we affirm the trial court's order denying CRP's land use appeal from the ZHB's decision denying CRP's substantive validity challenges to the TTD Amendment.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Circleville Road Partners, LP, :
               Appellant :
               :
        v. :
               :
Zoning Hearing Board of the Township :
of Ferguson :
               :   No. 1717 C.D. 2019
        v. :
               :
Township of Ferguson :
               :
        v. :
               :
Residential Housing Land, LLC and :
Residential Housing Development, LLC :
               :
        v. :
               :
Pine Hall Development Company f/k/a :
Pine Hall Development Corporation :

## ***ORDER***

AND NOW, this 31st day of December, 2020, the October 21, 2019 order of the Court of Common Pleas of Centre County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge
